Case No. 14-3371 Richard Thomason et al. v. Amalgamated Local No. 863 et al. Court will argue that it is not to exceed 15 minutes per side. Appeals for the appellants. Morning. Morning. I'd like to, yeah, my name is Ted Wills and I'm here on behalf of the Evans plaintiffs. I'd like to reserve five minutes if I could. As the court is well aware, this case has been up on appeal once before. The first time it was on a motion to dismiss and a kind of a hybrid motion for summary judgment. In that case, this court reversed on the grounds that there were issues that had to be discovered, both in discovery and factual issues that had to be decided. The kind of the premise or the outline, the principal issue that sets up the case, is whether my clients were members of Local 863 at the time of the September 20, 2004 vote. And this court set out the rule that established what a member is, and that's established in the U.S. Code, is that a person who meets the original requirements of membership has not withdrawn and has not been suspended or expelled. And that's the rule that was established in this case, and it's a rule that's established in the statute and consistently in the cases that look at this issue. But in the Hardeman decision, the Supreme Court has instructed that a union's consistent interpretation of its own constitution should not be disturbed by a federal court unless the challenged regulation is unreasonable. Here, the union defined member differently than in the facts of this case. They looked at all of it and they determined that these were not members based on a definition that they provided. So what's unreasonable about their interpretation or their definition of member in this case? Your Honor, first of all, there is, I think, a very strong factual dispute on whether or not there was a union interpretation regarding this meaning of member. Now this starts, really, the only source that comes up with something contrary than the statutory definition of member was the affidavit of Drudy. Other than that, the union officials who testified stated that the consistent with the statutory definition. Now to go along with that statutory definition of meet the requirements, did not withdraw, and was not expelled, we have to look, first of all, did the Evans plaintiffs meet the original requirements? Yes. Were they suspended or expelled? No. And did they voluntarily withdraw? Then that's the issue in this case. Did they voluntarily withdraw? And if we talk to the union officials other than Drudy, they all say that the Evans plaintiffs would not have voluntarily withdrawn because the constitution sets out a system for withdrawing. But their dues went to the new union, and doesn't the constitution say you can't belong to two locals at the same time? Yes, that's correct. And this court stated in the first appeal that that is a rule of the union, but it doesn't resolve the issue of whether or not these people were members of Local 863 or members of the... Well, they're paying dues to the other one. Pardon me? They're paying dues to the other one. Your Honor, the issue of dues is an important issue in this case. First of all, it's not a condition of membership because it's did they withdraw, were they expelled, and did they meet the original requirements. That's the statutory definition, and that's the rule that was set out by this court. But the dues... You keep going back to this point, which I get, that's fine, but I just want you to know what I'm thinking about that every time you say it, is those three things are set at a very high level of generality, and they allow for lots of interpretive maneuvering. So constantly going back to them isn't doing a lot of work for me, for what it's worth. I'd like to go on to this next point, which is on voluntarily withdrawal, which is really the only issue in the case. There is only two ways that that can happen. One is they can resign, which is only by written communication, or they can transfer to another union. How about stopping paying union dues? They did not stop. No, to 863. The union dues were paid. According to the record, the union dues were paid by Ford to the international, and the international then dispersed down the ladder, first to the regional and then to the local. That's what the record states. So this whole issue of paying dues to the union has to be understood. You're saying they were effectively paying dues to two unions at the same time. No, they're paying dues to the international. The international then dispersed down to the regional and the regionals to the local. And there's no evidence in the record that shows how that disbursement was made. So in effect you're saying the record's silent that it didn't go to 863? That's correct. It was dispersed down from the international to the regionals to the local, and nobody could say what the disbursement was. So it's Article 4, Section 1 of 863's bylaws say it's members or workers over whom the local's jurisdiction. How would that apply to people that were working in Michigan and Kentucky since the local didn't cover Michigan and Kentucky? In the case of Local 863, they were exercising jurisdiction over the members while they were in Kentucky and Michigan. They were doing that because they were negotiating the return to basic unit rights while they were out of town. The members were attending meetings, Local 863 meetings, voting on issues before the union in Cincinnati while they were working in Kentucky and Michigan. And the union in Cincinnati continued to negotiate and resolve their workers' comp issues while they were out of town. And so all of those facts show that they continued to exercise jurisdiction over these employees while they were out of town. And take it from the other position. Did the unions in Kentucky and Michigan exercise jurisdiction over these employees? No. While they were out of town, they were not allowed to vote. Ogle was one of them in Kentucky, was not allowed to vote. He went to a ledger to see if he was allowed to vote, and he was not. One of his co-workers asked if he could vote, and they said, you're not a Kentucky member. Your voting rights are in Cincinnati. He called back to Cincinnati, and Alexander, the person who was in charge of this issue, told him that if he wanted to vote, he had to come back to Cincinnati. So that is completely consistent with the issue of the local 863 exercising jurisdiction over these employees while they were out of town. Does it matter that 863 removed your client from its role and the new union included your client on its role? Your Honor, those, these, I think you're talking about the Grabowski documents, and the Grabowski documents are documents that were submitted by locals to the union and to the international. They were not done in any uniform manner. They were not controlled by the international. The international did not have any method of determining whether these people had a correct definition of a member or not, and these were just documents that could not be verified by the international as being accurate. So there is nothing, and then we go to this, Your Honor. You say, were they removed from the roles? In the first appeal, the president of local 863 filed an affidavit saying, we determine who is a member by looking at a list of active employees that Ford submits to us, and that was how we were supposed to tell. And we were not allowed to get discovery on that, so we appealed on that issue, and then we got the discovery from Ford on this active list, and these members, my clients, were on the active list. So they were not removed from the roles. The union stated that the way they determined was from the Ford active list. We subpoenaed those active lists, and then we threw them. Let me ask you if you think this is a fair way to look at this dispute, that on the one hand, what hurts you is that the interpretations of these union provisions seem to undercut your argument. On the other hand, what seems to help you is there's evidence that suggests there were local practices in this case which did not seem to follow that interpretation. Is that a fair way of thinking about this case? I would say, Your Honor, that, yes, there's conflicting evidence, but I would strongly dispute this interpretation because this is done by this person. So you agree with the part of my hypothetic or my way of thinking about it that helps you, but you disagree with the part that hurts you. Well, yes, but I would also like to. I was trying to think of a fair-minded way to look at this, and I'm going to get an advocate's perspective, which is everything helps us. The interpretation helps us. The practice helps us. Everything on that date helps us. Okay, fine. We'll look at the record. Maybe it all does help you. But can I respond on the interpretation? I'm sure you will. Go ahead. Okay. The only interpretation is by Drudy, who gave his affidavit after the depositions. His deposition, his affidavit, conflicted with his prior testimony because he had no knowledge. He said he didn't know anything about the transition agreement. He didn't know anything about the ZF employees. That's actually confirming my point. That proves what he's saying is, generally speaking, this is how we interpret this. He's not telling us how it was interpreted here. That's exactly the point I was making, that there's an interpretation out there that's quite hurtful to you, and as Judge Donnell pointed out, we usually defer to those interpretations. On the other hand, you seem to have a fair bit of evidence that that interpretation didn't seem to be followed here, given this, that, and the other thing. That's what I'm trying to say seems to be the problem in the case. He can't interpret because he's not an expert and he has no knowledge. He wasn't designated as an expert, and he can't give a lay opinion, so the interpretation is null and void. Thank you. All right. Thank you. May it please the Court. My name is Kristen Watson, Counsel for the Appellees in this matter. As a preliminary item in response to Mr. Will's arguments, Mr. Drudy's affidavit did not discuss the membership issue. Mr. Drudy's affidavit discussed whether it was appropriate to permit only the ZF employees to vote as to the merits of the case. In his deposition, Mr. Drudy provided the interpretation of the International Union UAW that when individuals like the plaintiffs accept voluntary permanent placements to facilities within the jurisdiction of other local unions, that their membership automatically transfers without the requirement to strictly comply with subsections A and B of Article 17, Section 3. Now he says he's not, he had to be qualified as an expert or he's not qualified to say that. How do you respond to that? Mr. Will's He says it, well, null and void is to quote him. Mr. Will's arguments in the briefing related to that issue were limited to the affidavit. And again, what we're talking about that Mr. Drudy offered was in the deposition, not the affidavit. But I totally agree with your point that the substance of his testimony was his understanding, his providing the official interpretation. And he did so from personal knowledge, his years of experience. This court in its previous decision directed discovery as to the official interpretation of the UAW from an individual qualified to offer it. He is the individual qualified to offer the interpretation. And any recital of facts I can't remember these provisions. Was he a Rule 26 something witness? Do you know the provision I'm talking about in the civil rules? He was not officially designated as such. But in the initial disclosures pursuant to the order of this court, he was openly identified as the individual with the authority to speak to the membership issue on behalf of the area. Did counsel for the plaintiff say we wanted to post somebody else to get this official interpretation? No, they didn't. Did they ask for a Rule 26 witness on this point? No, they did not. And all of the witnesses asked about it pointed back to Mr. Drudy as being the appropriate individual to offer the interpretation. There are two issues related to the membership issue here. First is the fact that they did voluntarily withdraw from the membership of UAW Local 863. And they effectuated that voluntary withdrawal in two ways. When they were first hired at UAW Charronville, which was under Local 863, they signed an hourly deduction form that authorized Ford Motor Company to hold their union dues and put them to not just Local 863, but whichever local union had jurisdiction over the facility. And they secondly effectuated their voluntary withdrawal by accepting the voluntary permanent placements to Michigan Truck or Kentucky Truck. So where did the dues go again? Did they go back to 863? When they transferred to Michigan Truck and Kentucky Truck, they went to Locals 900 and 862. And there is evidence on the record. This is not a dispute. So you disagree with him on this point? Absolutely. That they paid in a different place and the money came back to that place. Exactly. It is not true that dues go to the international union. Dues go to the local union. The evidence— I don't think he said that they didn't go. He says it's filtered down that Ford pays the international and then the international distributes it down. That's what I understood him to say. You're saying that's not the way it operates? That is not the way it operates. The testimony that Mr. Wills is relying on was testimony provided by individuals who testified they were not familiar with the process. That was their best guess. They were local union officials. The fact that they go directly to the local union is demonstrated by the hourly dues deduction forms they signed. They are assigned to the local union. There is evidence in the record that UAW Locals 862 and 900 received dues for the applicable time period, including September 2004. What's that evidence? There is a stipulation between the parties and letters from the locals setting forth the months in which these individuals paid dues to Locals 900 and 862. There is evidence in the record that Local 863 did not receive any dues for the years in question and the months, including September 2004, from these individuals. Evans, Lewis, and Ogle, in their deposition testimony, admitted that they paid dues to Locals 900 or 862 during the relevant months, including September 2004, and they did not pay dues to Locals. He says that some of his clients came back to Ohio and were voting with 863 in 863 elections during the relevant time period. Is that not true? Well, Your Honor, it was not an election situation. The testimony from two of his clients is they came and attended one general membership meeting of UAW Local 863. The testimony from various officials from the local is individuals that are not members attend the meetings of Local 863, such as spouses or family members, and it was not uncommon for individuals who were working out of town. Of course, they wanted to come back eventually to Local 863 to attend. The voting that they speak of was not voting on a contractual matter. It was not voting on an election. It was the kinds of votes, raise hand votes that happen at general membership meetings, such as approving minutes, approving transactions. And the testimony is that basically these vote, they shouldn't have voted. They didn't have a right to vote, but the votes are generally not very close, and the only time it would matter is if a vote was so close, they would have to split the house. And at that point, anybody who was not a member would be asked to leave the room. I want to go back to this dues because she said that that's one of the factors that has to be considered. Is it your statement that none of the plaintiff's dues during the relevant period were ever remitted to 863? That's correct. Those were paid to the Locals 900 and whatever else, and they stayed there. Right. Additionally, the second part of Article 17, Section 3 states that, so there's mandatory language. If you leave the jurisdiction to go to another union's jurisdiction, you shall establish your membership by one of two ways. The honorable withdrawal card. Drudy provided the testimony that, you know, this is Ford Motor Company in the year 2002. These processes were handled through computers so people don't physically take the honorable withdrawal cards. The second prong of that is through the payment of initiation fees and dues. Now, the plaintiffs had authorized Locals 900 and 862 to take initiation fees in those deduction forms if applicable, and they didn't take them, and that's an issue for Locals 900 and 862. Apparently, they waived them, but they did take the dues, which is the second prong, and the membership transferred to those new Locals. Mr. Lewis had a grievance. He testified that he had a grievance when he was working and that Local 900 processed it for him, and Local 900 processed an employee change status request, so they were being represented by the new Locals when they were working at Michigan Truck or Kentucky Truck. Local 863 was not exercising jurisdiction over them when they were working at Locals 900 or 862 by negotiating return to basic unit rights. Return to basic unit rights were negotiated in the foreign national collective bargaining agreement before the plaintiffs were ever hired. They weren't exercising jurisdiction over them. These are the terms that would apply to you when you came into the jurisdiction. The testimony regarding Mr. Ogle attempting to vote in Kentucky is that he went to vote and he was told his name was not on the list and he did not follow up. The testimony regarding another employee who's not Mr. Evans, Mr. Lewis, or Mr. Ogle is not relevant to this matter. This wasn't something that the plaintiffs were aware of before filing this lawsuit, and that testimony is that another individual, not a plaintiff, was told by Gary Alexander at Local 863 that he retained his voting rights at Local 863 when he was a member of Local 862. If that happened, Mr. Alexander was wrong. He's not an individual with the authority to interpret the UAW Constitution in this matter, and it's not relevant to the membership issue. Why does Rudy have this authority? He was the administrative assistant to the international president at the time, and his duties involved providing interpretations of the international constitution as part of his job duties. So when I said to your friend on the other side, I said, you know, on the one hand, it seems like the interpretations in the record hurt the plaintiff appellant, but on the other hand, there seem to be some local practices, which you've been, to your credit, trying to address that seem inconsistent with the interpretation. Is there any doctrine out there that says, well, federal courts should respect these interpretations and not lightly ignore them, but on the other hand, if there's evidence that members and other locals are not following them, then you find yourself in a different place. Well, Your Honor, the case law is consistent that a union's interpretation of its governing documents is entitled to deference, and the international union, UAW, is the body with the authority to make the interpretations of its governing documents. The instances that the plaintiffs refer to as being evidence that they remain members of Local 863 happen at the local level, and there's no indication that the international union at the level that can make an interpretation was aware. And one thing that I want to point out in terms of fairness in this case is Mr. Evans, Mr. Lewis, and Mr. Ogle never lost membership rights. A lot of the cases in this area involve somebody being denied the rights of membership. At all times, they were members of the international union, UAW, and a local union they're under. They are upset after the fact that they weren't members of the local union that they chose, at a particular point in time, but they had full membership rights and were deprived of no rights. The local union bylaws, as you pointed out, provide that the jurisdiction is for the Sharonville and Batavia facilities, and that the membership includes those individuals within that jurisdiction. So the bylaws of the local union are completely consistent with the interpretation, and some of the testimony Mr. Will cites to was offered by individuals who said they had no knowledge of these constitutional issues, yet offered their opinion, which is very dangerous. But everybody at every level believes that where you pay dues is where you're a member. People do understand that across the board, and that is the bottom line issue here. I wanted to briefly mention the active list issue because I completely disagree with Mr. Wills on this point. A former president offered an affidavit very early in this case that for voting purposes, membership is verified by an active list from Ford Motor Company. That active list is provided at a point in time when the vote occurs. The active list that Mr. Wills claims his clients were on was provided in 2011 pursuant to a subpoena. There is no dispute that these individuals were members of UAW Local 863 in 2011, and there was discussion of the international union records where Mr. Grabowski testified about them. Mr. Grabowski has two sets of records. One set is provided by the local unions, which showed Locals 900 and 862 adding these individuals to their membership roles after they came within their jurisdiction, shows 900 deleted them after they went back to Sharonville or Batavia, and shows Local 863 adding them as members after they returned to a facility within its jurisdiction. But Mr. Grabowski also has records from Ford Motor Company that are taken from these Ford active lists, and the records that he maintains in a separate database from Ford Motor Company show the transfer of membership, or excuse me, show the transfer to the facilities that are completely consistent with UAW's position in this matter. This court may affirm the judgment of the district court on any ground that finds support in this record, and I simply note that summary judgment in favor of the unions is also appropriate in this matter because the plaintiffs did not file this action within two years as required by the LMRDA, and also on the merits, the union's decision to permit only the ZF employed workers to vote was fair, reasonable, and entitled to deference as more fully described in the briefs. Thank you very much. All right, thank you. Mr. Willis. Your Honor, Mr. Willis, I notice in your amended complaint, in your prayer for relief, you asked for a declaration that the vote was illegal. If we agree with you and issue that, find that it was an illegal vote, isn't your remedy a re-vote instead of, I mean, how can we get in there and just take part of it out? No, Your Honor, I think, you know, that's probably theoretically a remedy, but the court has broad discretion on what kind of remedy can be made here, and the two members in the majority on the first appeal stated that the issue of a remedy was really something that would be left after the merits had been determined. Just give us these practical remedies. What are they? Well, I think the easiest one is money. They lost money because they were lost positions on the seniority list. Wouldn't you have to show causation? How would you show causation? Well, Your Honor. Is there evidence about what the margin was? Yes, Your Honor. That, of course, the defendants did not raise that issue in their motion for summary. I'm just asking. Thoroughly explored that issue. What was the margin of the vote? The margin of the vote originally, because only ZF was allowed to vote, that they all voted for it. But we have the statistical analysis of the vote and of the members who would have voted if they had been allowed to that showed we would have won the vote if the Ford members had been allowed to vote. But that was not brought up on summary judgment. And so the issue of the remedy, I think, is still wide open. But if it does happen, no. So, Mr. Drudy, I mean, so they put this witness on. You had the right to do a 26-whatever-subsection-it-is requirement. You know, expert. In other words, they didn't designate him as an expert. Okay. I got that. I'm saying you had the right. That's usually how this works. It's usually people in your position that say we want the person from the organization who you will say will give us the official interpretation. As I'm understanding it, you didn't ask for that. I didn't ask for it because that's not my issue, Your Honor. If they want to propose an interpretation, then they should do it. And I took Drudy's deposition. He had no knowledge. When it comes to the issue of members, his testimony during the deposition was that they would have to withdraw or they would have to submit a withdrawal card or initiation fee at the subsequent local or they would have to apply. I'm at a higher level here. My level is they put somebody on and they say here's his job. He's the person that can tell you how these agreements are interpreted. It seems to me when they do that, and I think that's permissible, it's your responsibility to either come back and say no, he's wrong. That's not the right interpretation because the interpretation is relevant here. And I took his deposition, and he said in his deposition the only thing we really talked about that much was about whether or not they were members. And he conceded that if they were going to be members in Michigan and Kentucky, they would have to apply and go through the five steps of an application process in Kentucky and Michigan. And they did not do it, and he conceded that. I'm going to guess. I'll go look at it, but I'm going to guess that that was part of your examination of him, and that is one way to do this. I'm doubtful, he said, that's the only way to do that. Only way to do what, transfer? Yes. Well, he said his testimony was it's automatic, but he had no basis to say that. He just said it's automatic. And he was a lay witness, so I'm asking for his personal knowledge. I'm not responsible for designating their experts or asking them to assign experts. If they don't want to do it, then they leave their case vacant. If they wanted him as an expert, they should have designated him as an expert, and they didn't do it. Because, first of all, they couldn't establish his expertise. Your Honor, I'd like to go back to this issue of the interpretation and the local practices. And I think on the interpretation and how the local practice fits into this is it shows that the so-called interpretation by Drudy is not, as I say, null and void. Because the factual testimony of what actually happened shows that this so-called interpretation by Drudy was not longstanding and consistent. And that's what an interpretation has to be if it's contrary to the Constitution. In this case, it was contrary to the Constitution because they didn't have withdrawal cards, they didn't pay initiation fees, they did not voluntarily withdraw. So the only thing they can rely on is a longstanding, consistent practice. And my witnesses or their witnesses that I took their depositions testified it was not a longstanding. Those witnesses, Law Will, the president of the local 863, said that if you're going to transfer to another union, you have to have a withdrawal card and you have to pay an initiation fee. Harris said the same thing. Is it really the case it has to be longstanding? I mean, isn't there a first time for everything? I mean, the first time an issue comes up is the first interpretation. Yes, it has to be longstanding. If it's contrary to the black-letter law of the Constitution, it has to be longstanding. Now, how does this happen in the union atmosphere? A lot of times, there's what – Your light's on, so why don't you finish this thought. Go ahead. A lot of times, practices do develop that are amicable between the union and the employer, and those practices then develop. And if they're contrary to the black-letter law of the Constitution, then they become established and you can rely on them. But that's not the case here because the union officials at 863 testified that it's got to be initiation fee or withdrawal card. Thank you, Your Honor. Thank you, Mr. Willis. Thank you, Ms. Watson. We appreciate both of your helpful briefs and arguments today. The case will be submitted, and the clerk may call the next case.